# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**BACKARI MACKEY, #21282-001**                                                                            **PETITIONER**

**V.**                                                                 **CIVIL ACTION NO. 5:09cv90-DCB-MTP**

**FEDERAL BUREAU OF PRISONS and**
**BRUCE PEARSON, Warden**                                                             **RESPONDENTS**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition [1] of Backari Mackey for a Writ of Habeas Corpus, filed under 28 U.S.C. § 2241. Having considered the Petition, the Answer [11], the Traverse [12], all matters made a part of the record in this case, as well as applicable law, the undersigned is of the opinion that the Petition should be denied and dismissed with prejudice.

## Background

Following a jury trial, Petitioner Backari Mackey was convicted in the United States District Court for the Northern District of Alabama of three counts of conspiracy to distribute a controlled substance-cocaine base "crack", in violation of 21 U.S.C. § 846, and six counts of distribution of a controlled substance - cocaine base "crack", in violation of 21 U.S.C. § 841. On January 13, 1999, Petitioner was sentenced to 360 months imprisonment, followed by five years of supervised release, as well as fines and costs. Petitioner is currently incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City") and is projected to be released on September 29, 2019. *See* Petition [1] at 2-3; Traverse [12] at 1-2; Exh. 1 to Answer.

On October 23, 2008, while he was at FCC Yazoo City, a random urine sample was taken from Petitioner for drug testing by Senior Officer Specialist Fuqua. *See* Exh. C to Answer; Memorandum [2] in Support of Petition at 1. Petitioner provided the urine sample, and Officer

Fuqua secured the specimen cup by placing the top on it in Petitioner's presence. *See* Exh. C to Answer. Petitioner was asked to read and sign a Chain of Custody form certifying that he had provided the urine sample, that the specimen was sealed in his presence and that the specimen number on the form and on the label affixed to the specimen container were the same. *See* Exhs. C & D to Answer. Petitioner also initialed the seal at the bottom of the Chain of Custody form, and Officer Fuqua assigned a date and time to the seal which corresponded to the date and time the specimen was collected. Officer Fuqua then sealed the specimen cup. This was all done in Petitioner's presence. *See* Exh. C to Answer.

Officer Fuqua then performed a cup test of the specimen. *See* Exh. C to Answer; Memorandum at 1; Traverse at 2. The results were inconclusive, and Officer Fuqua informed Petitioner that if the results did not "improve towards a conclusively negative reading," the specimen would be sent to the laboratory. The results remained inconclusive so Officer Fuqua sent the specimen to the laboratory for clarification. *See* Exh. C to Answer. On November 3, 2008, the results came back showing that Petitioner's urine sample had tested positive for THC Metabolite (marijuana). *See* Exhs. C & D to Answer. After medical staff at FCC Yazoo City confirmed that Petitioner was not taking any medication that could have caused a positive result, Senior Officer Specialist (SOS) Roderick Fulton prepared an Incident Report dated November 3, 2008, charging Petitioner with a violation of offense code 112, Use of Marijuana. *See* Exhs. E, F & H to Answer.

In block 2 of the Incident Report, SOS Fulton wrote Backari Mackey as the inmate's name. In block 3, SOS Fulton wrote 21282-001 as Mackey's Register Number. In block 11, SOS Fulton wrote 08145-043 as Mackey's Register Number. *See* Exh. E to Answer. Lieutenant Stephen Fleming thereafter reviewed the Incident Report and discovered that there was a

typographical error regarding Mackey's Register Number - specifically, that 08145-043 written in block 11 of the report belonged to another inmate, Twmell Lott, rather than to Petitioner.[1] *See* Declaration of SOS Fulton (Exh. H to Answer). After becoming aware of the typographic error in Petitioner's Incident Report, Lieutenant Fleming drew a line through the incorrect Register Number and wrote the correct Register Number above the line, and he initialed the correction. The remainder of the information contained in the Incident Report was unchanged, as it contained the correct name, Register Number (in block 3), specimen ID number, dates and times, and work assignment. Lieutenant Fleming then delivered the corrected Incident Report to Petitioner on November 3, 2008. *See* Exhs. E, H & I to Answer.

A preliminary hearing was held by the Unit Discipline Committee ("UDC") on November 5, 2008. Petitioner was advised of his rights and stated that he understood them. Petitioner did not make a statement.[2] Based on the Incident Report and the laboratory report, the matter was referred to the Discipline Hearing Officer ("DHO") for further hearing. *See* Exhs. E & K to Answer. Petitioner refused to sign the Notice of Discipline Hearing before the DHO as well as the Inmate Rights at Discipline Hearing form, both provided to him on November 5, 2008. *See* Exhs. K & L to Answer.

The DHO hearing was held on November 13, 2008 before the alternate DHO - Deputy Case Manager (CMC) Matthew J. Dalton.[3] Petitioner stated that he understood his rights, and he

---

[1] Inmate Lott had also provided a random urine sample early in the morning on October 23, 2008. The specimen number for Lott's sample, also provided on the Chain of Custody form, was affixed to the specimen container in Lott's presence, and the container was sealed with a tamper-proof seal in Lott's presence. Lott acknowledged this by signing the specimen form. Lott's specimen also tested positive for THC, and Lott also received an Incident Report. *See* Exhs. H, I, J & Z to Answer.

[2] Petitioner alleges that he provided a full statement but that "Unit Discipline hearing staff arbitrarily decided not to record [his] full statement." *See* Memorandum at 5.

[3] "Each Bureau of Prisons institution shall have an independent hearing officer (DHO) assigned to conduct administrative fact-finding hearings covering alleged acts of misconduct and

waived his right to a staff representative and requested no witnesses on his behalf. *See* Exhs. G & K to Answer. Petitioner admitted to having smoked marijuana. In addition to Petitioner's admission, the DHO also considered the following evidence: the Chain of Custody Form; the laboratory report showing that Petitioner's sample had tested positive for marijuana; and the memorandum from medical staff stating that Petitioner was not taking any medication that would cause a positive result for marijuana. *See* Exh. G to Answer. Based on the foregoing, the DHO concluded that Petitioner had committed the act as charged, and imposed the following sanctions: disallowance of 40 days' Good Conduct Time ("GCT"); 30 days of disciplinary segregation (suspended pending 180 days of clear conduct); and restriction of visitation privileges for one year (only immediate family could visit during this time). *See* Exh. G to Answer. Petitioner was issued a copy of the DHO Report on November 21, 2008. *See* Exh. G to Answer. Petitioner appealed the DHO's decision and the appeal was denied on December 29, 2008. *See* Exh. V to Answer.

In the instant Petition, filed *pro se* on May 29, 2009, Petitioner makes a number of claims regarding both the procedures and findings of his disciplinary hearing. First, Petitioner claims that prison staff acted arbitrarily and capriciously in: failing to consider and investigate the fact that another inmate's identification number appeared in the Incident Report; not recording Petitioner's full statement given at the UDC hearing; not providing a staff representative upon his request; and not advising him to use the Administrative Remedy Procedure to challenge the

---

violations of prohibited acts...In the event of a serious disturbance or other emergency, or if an inmate commits an offense in the presence of the DHO, an alternate Discipline Hearing Officer will be appointed to conduct hearings with approval of the appropriate Regional Director. If the institution's DHO is not able to conduct hearings, the Warden shall arrange for another DHO to conduct the hearings. This person must be trained and certified as a DHO, and meet the other requirements for DHO." 28 C.F.R. § 541.16(a). Deputy CMC Dalton serves as one of FCC Yazoo City's alternate DHO's. *See* Exh. M to Answer.

4

proper handling of his sample. Next, Petitioner argues that the alternate DHO who conducted his disciplinary hearing was not trained and certified as a DHO and, therefore, the hearing was conducted in violation of BOP regulations. Finally, Petitioner argues that the DHO failed to consider certain conflicting evidence - specifically: that inmate Lott's identification number appeared in his Incident Report; that his urine sample was never sealed in his presence prior to him signing the form; that he advised Mr. Dalton that he had not been read his rights and did not understand them; and that Unit Discipline staff did not record his full statement or provide him with requested staff representation. Petitioner also claims that Mr. Dalton was biased against him, and that he coerced him into admitting his guilt in exchange for a representation that his 30 days of disciplinary segregation would be suspended. As a result of the foregoing, Petitioner claims that his due process rights were violated and that the incident report should be expunged and his 40 days of GCT restored. *See* Memorandum at 4-9; Traverse [12] at 2-11.

Analysis

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that disallowance of GCT, which will result in an inmate's confinement being extended, requires due process.[4]

---

[4] With respect to the other sanctions imposed on Petitioner (restriction of visitation privileges and disciplinary segregation), no process was due. "[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2297 (1995)). Rather, the liberty interests which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin*, 115 S.Ct. at 2297). Accordingly, restrictions or loss of an inmate's visitation privileges "provide no basis for a claim of the denial of constitutional rights." *Palmisano v. BOP*, 258 Fed. Appx. 646, at * 2 (5th Cir. Dec. 11, 2007) (citations omitted); *see also Lewis v. Dretke*, 54 Fed. Appx. 795, at * 1 (5th Cir. Dec. 11, 2002) (prisoner's claim challenging restriction of commissary privileges and loss of telephone privileges resulting from allegedly false discipline charges did not implicate due process); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (no constitutional right to visitation privileges); *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) ("administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (rejecting

5

However, the Court explained that due process in the context of prison discipline is not the same as due process in the criminal law context because "[p]rison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Id.* at 556. Thus, the Court held that due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision maker,[5] and also receives: 1) at least 24 hours advance written notice of the charges; 2) an opportunity to present documentary evidence and testimony from witnesses; 3) help from other inmates or staff, if needed (*e.g.*, if the inmate is illiterate or the charges are complex); and 4) a written statement of the evidence relied on and the reason for the disciplinary action. *Id.* at 564-70.

The record in this case reveals that Petitioner clearly received all of these protections. Petitioner received at least 24 hours advance written notice of the charges before the DHO hearing was held. Petitioner attended the hearing and was given the opportunity to present testimony from witnesses (although he chose not to), and he made an oral statement (in the form of an admission that he had smoked marijuana). Petitioner was advised of his right to request a staff representative, which he waived, as well as his other rights before the DHO. The DHO Report sets out the evidence upon which his finding was made and his reasons for imposing the sanctions. *See* Exhs. E, G, K & L to Answer.

As for the evidence to support the finding of Petitioner's guilt, the Supreme Court has held that in order for a prison disciplinary decision to pass constitutional muster, there merely must be "some evidence" to show that the inmate committed the offense in question. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether

---

claim that confinement in administrative segregation violated a prisoner's due process rights)).

[5] Petitioner's allegation regarding the alternate DHO's impartiality will be addressed below.

this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Indeed, even if the evidence is "meager," as long as there is "some evidence" to support the findings of the disciplinary board, its decision must be upheld.[6] *Id.* at 456.

Here, the Incident Report and supporting documentation demonstrate that a urine sample taken from Petitioner tested positive for the presence of drugs.[7] This is "some evidence" that Petitioner committed the offense. *See*, *e.g.*, *Davenport v. Anderson*, 132 F.3d 1456, at * 1 (5th Cir. Dec. 2, 1997) (*per curiam*) (citing *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986)) (positive drug urinalysis result constituted "some evidence" on which to find prisoner guilty of unauthorized possession of marijuana); *see also Johnson v. Hanks*, 52 Fed. Appx. 283, 285 (7th Cir. Nov. 22, 2002) (urine test result qualified as "some evidence" supporting prison discipline finding that inmate had used drugs); *Easter v. Saffle*, 51 Fed. Appx. 286, 289 (10th Cir. Nov. 14, 2002) ("A single urinalysis amounts to 'some evidence' and thus satisfies due process."); *Peranzo v. Coughlin*, 850 F.2d 125, 126 (2d Cir. 1988) (*per curiam*) (positive drug test result is sufficient evidence under *Hill* to warrant prison discipline). In addition, Petitioner confessed to the offense. Thus, there was clearly "some evidence" that Petitioner committed the offense in question.

Petitioner claims that prison officials acted arbitrarily and capriciously in a number of

---

[6] "The logic behind the Supreme Court's *Hill* standard is that prison disciplinary hearings are set in a uniquely charged atmosphere, in which prison administrators must act swiftly - even if such efficiency is attained by sacrificing the due process protections guaranteed in other settings." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001) (citation omitted).

[7] Petitioner claims that his urine sample was never sealed in his presence prior to him signing the form. However, this is belied by the evidence in the record. *See* Exhs. C & H to Answer.

7

ways. First, he argues that they failed to consider and investigate the fact that Inmate Lott's Register Number appeared on his Incident Report. As SOS Fulton stated in his Declaration, however, this was a mere typographic error. SOS Fulton explained:

> [T]he narrative of drug use incident reports are consistently written in the same format with the exception being the inmate's name and register numbers, specimen ID number, as well as the dates and times. Inmate Mackey's incident report included his correct name, his correct register number at the top section of the incident report, the time in which he submitted the urine sample, and his work assignment which are/were different from inmate Lott's incident report.

*See* Exh. H to Answer.

Petitioner also claims that he made a full statement before the UDC, but that it was not recorded, and that he was not provided with a requested staff representative. These claims are contradicted by the evidence in the record, which establishes that Petitioner chose not to make a statement before the UDC,[8] and that he waived his right to a staff representative. *See* Exhs. E, G, K & L to Answer. Petitioner also argues - for the first time - that he was not advised of his rights to use the Administrative Remedy Procedure to challenge the proper handling of his sample. However, the record reflects that following the DHO hearing, Petitioner filed several administrative grievances challenging the disciplinary proceedings. *See* Exhs. N, O, Q, S, U & W to Answer.

Petitioner next claims that the alternate DHO, Deputy CMC Dalton, was not trained and certified to conduct his disciplinary hearing. However, Petitioner provides no evidence to support this allegation. Further, the record establishes that Deputy CMC Dalton has been certified as an alternate DHO since March 2, 2006. *See* Exh. M to Answer. And, even assuming *arguendo* that

---

[8] Notably, Petitioner nowhere explains the content of his alleged "full statement" to the UDC. Thus even assuming that such a statement was made and not recorded, it is impossible to know how or if it would have affected the disciplinary proceedings.

CMC Dalton's serving as the alternate DHO somehow violated BOP policy or regulations, "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (mere failure of prison officials to comply with their own regulation does not give rise to a constitutional violation).

Finally, Petitioner alleges that the DHO engaged in misconduct during his disciplinary proceedings. First, Petitioner claims that Deputy CMC Dalton coerced him into admitting to the drug use in exchange for a representation that his disciplinary segregation would be suspended. However, the record reflects that the DHO relied on several pieces of evidence to corroborate Petitioner's admission: the laboratory report, the Chain of Custody form, and supporting memoranda from medical staff. *See* Exh. G to Answer. Thus, even if Petitioner's admission were, in fact, false or coerced (an allegation for which he offers no evidence), there still would have been "some evidence" to support a finding of his guilt. Next, Petitioner alleges that Deputy CMC Dalton was biased against him.[9] This claim is based upon an alleged statement made to him by the DHO during the hearing. Petitioner claims that Deputy CMC Dalton said to him: "I'm not here to listen to all that, I'm here to impose sanctions for Mr. Gennero."[10] *See* Memorandum at 8. Petitioner has failed to establish that Mr. Dalton was biased against him. Moreover, as noted *supra*, the evidence presented at the DHO hearing clearly supports a finding of Petitioner's guilt.

---

[9] The court notes that BOP regulations provide that "[i]n order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. § 541.16(b). None of these situations are alleged here.

[10] According to Petitioner, Mr. Generro was FCC Yazoo City's DHO. *See* Memorandum at 7.

9

RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Backari Mackey's Petition [1] for a Writ of Habeas Corpus be denied and dismissed with prejudice.

NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 9th of December, 2009.

s/Michael T. Parker  
United States Magistrate Judge
